IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID MR. JENSEN and KIMBERLY MR. JENSEN, | ) ) ) | CASE NO. 4:20-cv-03113 |
| Plaintiffs, | ) ) ) | **BRIEF IN SUPPORT** |
| vs. | ) ) ) | **OF MOTION FOR** **SUMMARY JUDGMENT** |
| TAYLOR COMPANY, MIDDLEBY CORPORATION, RSM ACQUISITION, LLC d/b/a RSM SERVICE GROUP, and TRI-CITY FOODS, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

In their lawsuit, Plaintiffs allege that on September 21, 2016, Plaintiff David Jensen ("David") suffered an electric shock while operating a shake machine at a Burger King in Omaha, Nebraska, while in the course and scope of his employment with Defendant Tri-City Foods (Plaintiffs' Complaint, pg. 3).

The shake machine unit which is the subject of this lawsuit (more accurately known as Combination Freezer Model 632, Serial Number K8125068, but hereafter referred to as "Shake Machine" for the sake of brevity), was manufactured by Defendant Taylor Company ("Taylor") in Rockton, Illinois on December 22, 2008 and installed on June 3, 2009 at Burger King Store No. 500, located at 3222 North 90th Street, Omaha, Nebraska, by McCormack Distributing Company. Plaintiffs filed this lawsuit on September 18, 2020, eleven (11) years, three (3) months, and fifteen (15) days after the Shake Machine was first installed for use at Burger King Store No. 500.

Taylor and Middleby have filed a Motion for Summary Judgment respectfully requesting that the Court find that, as a matter of law, Plaintiffs' claims are barred by the statute of repose.

## II. STATEMENT OF UNDISPUTED FACTS

1. Middleby Corporation acquired Taylor Company by stock purchase in 2018 (Thompson Affidavit, ¶3).

2. Middleby Corporation was not involved in the design, manufacture, distribution, or maintenance of the Taylor Company product known as Combination Freezer Model 632, Serial Number K8125068 (Thompson Affidavit, ¶4).

3. The first notice Middleby Corporation received of the alleged September 21, 2016 incident was its receipt of the Complaint and Summons in the captioned lawsuit on November 25, 2020 (Thompson Affidavit, ¶5).

4. Taylor Company is a manufacturer of foodservice equipment, including Combination Freezer Model 632, Serial Number K8125068 (Minard Affidavit, ¶4 and ¶9).

5. Combination Freezer Model 632, Serial Number K8125068, was manufactured by Taylor Company in Rockton, Illinois on December 22, 2008 (Minard Affidavit, ¶9).

6. Taylor Company provided a limited two (2) year warranty, beginning on the date of original installation, for repair and replacement of any failed defective parts for Combination Freezer Model 632, Serial Number K8125068 (Minard Affidavit, ¶10)( (Combination Freezer Model 632 Operator's Manual pg. 43).

7. Combination Freezer Model 632, Serial Number K8125068 was sold to Burger King through its distributor, Taylor Ultimate, on December 30, 2008 (Minard Affidavit, ¶11).

8. Combination Freezer Model 632, Serial Number K8125068, was shipped from Rockton, Illinois to McCormack Distributing Co. in LeMars, Iowa on May 21, 2009 (Minard Affidavit, ¶12).

9. On June 3, 2009 at approximately 1:27 p.m., Combination Freezer Model 632, Serial Number K8125068, was installed by McCormack Distributing Co. technician Todd Teharr at Burger King Store No. 500, located at 3222 North 90th Street, Omaha, Nebraska (Minard Affidavit, ¶13).

10. Burger King Store No. 500 was the first and only user of Combination Freezer Model 632, Serial Number K8125068 (Minard Affidavit, ¶14).

11. McCormack Distributing Co. provided routine maintenance service on Combination Freezer Model 632, Serial Number K8125068, from June 3, 2009 to December 28, 2013 (Minard Affidavit, ¶15).

11. Taylor Company made no material changes to the manufacturing process of Combination Freezer Model 632 after June 3, 2009 (Minard Affidavit, ¶16).

12. Taylor Company made no material design changes to the original model specifications of Combination Freezer Model 632 after June 3, 2009 (Minard Affidavit, ¶17).

13. Taylor Company made no material changes to the electrical system of Combination Freezer Model 632 after June 3, 2009 (Minard Affidavit, ¶18).

14. Taylor Company is not aware of any other incidents aside from that claimed in the captioned lawsuit involving an alleged electric shock injury from a Combination Freezer Model 632 machine (Minard Affidavit, ¶19).

15. Taylor Company is not aware of any federal or state or industry investigation of the safety of Combination Freezer Model 632 (Minard Affidavit, ¶20).

16. The first notice Taylor Company received of the alleged September 21, 2016 incident was its receipt of the Complaint and Summons in the captioned lawsuit on November 30, 2020 (Minard Affidavit, ¶21).

18. Plaintiffs filed the original Complaint initiating this lawsuit against Defendant Taylor Company and Defendant Middleby Corporation on September 18, 2020 (Complaint, Filing No. 1).

### III.  LEGAL STANDARD

Summary judgment is proper when the depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other material demonstrate that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a) and (c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).  Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial.  *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

### IV.  ARGUMENT

**A.  PLAINTIFFS' CLAIMS AGAINST TAYLOR AND MIDDLEBY ARE BARRED BY THE STATUTE OF REPOSE.**

Plaintiffs' lawsuit against Taylor and Middleby arises out of the alleged failure of the Shake Machine and alleged resulting personal injury.  The dates pertinent to this lawsuit with respect to the Shake Machine, set forth succinctly and in chronological order, are the following:

1. December 22, 2008:    Date of manufacture
2. December 30, 2008:    Date of sale
3. June 3, 2009:         Date of installation

4. September 21, 2016: Date of alleged injury

5. September 18, 2020: Lawsuit filed

Because the alleged injury occurred in Nebraska, an assessment of the applicable limitations on Plaintiffs' lawsuit begins in Nebraska. Neb. Rev. Stat. §25-224, the statute of limitations applicable to actions on product liability, provides in pertinent part:

(1) All product liability actions, except one governed by subsection (5) of this section, shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

(2)

(a) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed by section 2-725 Uniform Commercial Code or by subsection (5) of this section, shall be commenced as follows:

(i) For products manufactured in Nebraska, within ten years after the date the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption; or

(ii) For products manufactured outside Nebraska, within the time allowed by the applicable statute of repose, if any, of the state or country where the product was manufactured, but in no event less than ten years. If the state or country where the product was manufactured does not have an applicable statute of repose, then the only limitation upon the commencement of an action for product liability shall be as set forth in subsection (1) of this section.

Section 2-275 Uniform Commercial Code (limitations on actions for contracts of sale) does not apply here. See *Fritchie v. Alumax, Inc.*, 931 F.Supp. 662 (D.Neb. 1996) (where claims are predominantly tort-like in nature, rather than principally contractual in nature, Nebraska courts apply Neb. Rev. Stat. §25-224 rather than Neb. UCC §2-725); citing *Thomas v. Countryside of Hastings, Inc.*, 246 Neb. 907, 524 N.W.2d 311 (1994). Section 25-224(5), pertaining to actions to recover damages based on exposure to asbestos, is also inapplicable. Because the Shake Machine was manufactured in Illinois, Neb. Rev. Stat. §25-224(2)(a)(ii) requires a determination as to whether Illinois has a statute of repose and, if so, what time is allowed by Illinois law for filing a product liability lawsuit.

Illinois' statute of repose for products liability actions is found at 735 ILCS 5/13-213, which provides, in pertinent part:

(a) As used in this Section, the term:

(1) "Alteration, modification or change" or "altered, modified, or changed" means an alteration, modification or change that was made in the original makeup characteristics, function or design of a product or in the original recommendations, instructions and warnings given with respect to a product including the failure properly to maintain and care for a product.

(2) "Product" means any tangible object or goods distributed in commerce, including any service provided in connection with the product. Where the term "product unit" is used, it refers to a single item or unit of a product.

(3) "Product liability action" means any action based on the doctrine of strict liability in tort brought against the seller of a product on account of personal injury, (including illness, disease, disability and death) or property, economic or other damage allegedly caused by or resulting from the manufacture, construction, preparation, assembly, installation, testing, makeup, characteristics, functions, design, formula, plan, recommendation, specification, prescription, advertising, sale, marketing, packaging, labeling, repair, maintenance or disposal of, or warning or instruction regarding any product. This definition excludes actions brought by State or federal regulatory agencies pursuant to statute.

(4) "Seller" means one who, in the course of a business conducted for the purpose, sells, distributes, leases, assembles, installs, produces, manufactures, fabricates, prepares, constructs, packages, labels, markets, repairs, maintains, or otherwise is involved in placing a product in the stream of commerce.

(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly

has warranted or promised the produced for a longer period and the action is brought within that period.

(c)      No product liability action based on the doctrine of strict liability in tort to recover for injury or damage claimed to have resulted from an alteration, modification or change of the product unit subsequent to the date of first sale, lease or delivery of possession of the product unit to its initial user, consumer or other non-seller shall be limited or barred by subsection (b) hereof if:

(1)      the action is brought against a seller making, authorizing, or furnishing materials for the accomplishment of such alteration, modification or change (or against a seller furnishing specifications or instructions for the accomplishment of such alteration, modification or change when the injury is claimed to have resulted from failure to provide adequate specifications or instructions), and

(2)      the action commenced within the applicable limitation period and, in any event, within 10 years from the date such alteration, modification or change was made, unless defendant expressly has warranted or promised the product for a longer period and the action is brough within that period, and

(3)      when the injury or damage is claimed to have resulted from an alteration, modification or change of a product unit, there is proof that such alteration, modification or change had the effect of introducing into the use of the product, by reason of defective materials or workmanship, a hazard not existing prior to such alteration, modification or change.

(e) Replacement of a component part of a product unit with a substitute part having the same formula or design as the original part shall not be deemed a sale, lease or delivery of possession or an alteration, modification or change for the purpose of permitting commencement of a product liability action based on the doctrine of strict liability in tort to recover for injury or damage claimed to have resulted from the formula or design of such product unit or of the substitute part when such action would otherwise be barred according to the provisions of subsection (b) of this Section.

Like Neb. Rev. Stat. §25-224(a)(2)(i), 735 ILCS 5/13-213(b) provides that a product liability lawsuit must be commenced within 10 years after delivery of possession to its initial user. The extended 12-year period unique to Illinois' statute only applies to those situations where, for example, the product is delivered to a retailer but not sold to its ultimate user until a later time. See *Babich v. River Oaks Toyota*, 377 Ill. App. 3d 425, 879 N.E.2d 420 (2007).

Both Nebraska's and Illinois' 10-year statute of repose unquestionably apply to Plaintiffs' claims against Taylor and Middleby under a theory of strict product liability. In the instant case, the Shake Machine was sold to Burger King, its first and only user, and installed at Burger King Store No. 500 in Omaha, Nebraska on June 3, 2009. Under both Neb. Rev. Stat. §25-244(2) and 735 ILCS 5/13-213(b), Plaintiffs had until June 3, 2019 to commence their lawsuit for strict product liability against Taylor and Middleby. Because Plaintiffs filed this lawsuit against Taylor and Middleby on September 18, 2020, more than 15 months past the expiration of the statute of repose, their strict product liability claims against Taylor and Middleby are time-barred. The question remains, however, whether this bar also applies to

Plaintiffs' claims against Taylor and Middleby under negligence and implied warranty theories. A review of pertinent authority reveals that those claims, too, are time-barred.

In Nebraska, the product liability statute of repose applies to all personal injury lawsuits brought against manufacturers, regardless of the legal theory alleged. Neb. Rev. Stat. §25-21,180 provides:

> As used in sections 25-224 and 25-21,180 to 25-21,182, unless the context otherwise requires: Product liability action shall mean any action brought against a manufacturer, seller, or lessor of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formulation, installation, preparation, assembly, testing, packaging, or labeling of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or intended use of any product, or the failure to provide proper instructions for the use of any product.

The statute of repose created by 735 ILCS 5/13-213 has been interpreted to apply only to product liability claims based on a theory of strict liability in tort. *Dintelman v. Alliance Machine Co.,* 117 Ill.App.3d 344, 453 N.E. 2d 128 (1983). However, Neb. Rev. Stat. §25-224(2)(a)(ii) does not *incorporate* a manufacturing state's statute of repose. It merely applies the *time frame* of a manufacturing state's statute of repose and goes no further ("For products manufactured outside Nebraska, *within the time allowed* by the applicable statute of repose, if any, of the state or country where the product was manufactured, but in no event less than ten years.") (emphasis supplied). The Nebraska legislature could have written §25-224(2)(a)(ii) to incorporate a manufacturing state's entire statutory scheme, e.g., "For products manufactured

10

outside Nebraska, the statute of repose of the state in which the product was manufactured shall apply." It did not. Nebraska's legislature did, however, enact specific legislation in Neb. Rev. Stat. §25-21,180 affording the protections under the 10-year statute of repose broadly to all manufacturers regardless of the theory of recovery alleged against them. The Nebraska legislature, in enacting Neb. Rev. Stat. §25-224(2), determined as a matter of public policy that a product liability defendant should not be subjected to liability 10 years after the product was first sold or leased for use or consumption. *Farber v. Lok-N-Logs, Inc.*, 270 Neb. 356, 367, 701 N.W.2d 368, 377 (2005); citing *Budler v. General Motors Corp.*, 268 Neb. 998, 689 N.W. 2d 847 (2004). While a statute of limitations is generally procedural in nature, a statute of repose is generally substantive in nature. *Farber* at 366, 701 N.W.2d at 377. It is clear that Nebraska's state courts see its statute of repose as substantive law. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 737-38 (8th Cir. 1995). A United States District Court sitting in diversity jurisdiction applies the substantive law of the forum state. *Fogelbach v. Wal-Mart Stores, Inc.*, 270 F.3d 696 (8th Cir. 2001).

The time frame to commence a product liability lawsuit in Nebraska is 10 years whether applying Nebraska law or Illinois law. In Nebraska, the state where the captioned lawsuit is pending, the 10-year limitation period applies to *all* personal injury lawsuits against manufacturers arising out of an alleged product defect. Plaintiffs' claims against Taylor and Middleby are barred in their entirety and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendant Taylor Company and Defendant Middleby Corporation respectfully request that the Court find that that there is no genuine dispute of material fact, and that the moving Defendants are entitled to judgment as a matter of law.

**DATED** this 19th day of November, 2021.

                        MIDDLEBY CORPORATION and
                        TAYLOR COMPANY, Defendants,

          By:        /s/ Joel E. Feistner
          For:   LOCHER, PAVELKA, DOSTAL,
                     BRADDY & HAMMES, LLC
                200 The Omaha Club
                2002 Douglas Street
                Omaha, Nebraska 68102
                P: (402) 898-7000
                F: (402) 898-7130
                Joel E. Feistner, #21474
                jfeistner@lpdbhlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

cstull@atwoodlawyers.com
cisrael@atwoodlawyers.com
Corey L. Stull
Christa Binstock Israel
Atwood, Holsten, Brown, Deaver
 & Spier Law Firm, P.C., L.L.O.
575 Fallbrook Blvd. Suite 206
Lincoln, NE 68521
ATTORNEYS FOR PLAINTIFFS

mgibbons@woglaw.com
Michael T. Gibbons, PC, LLO
619 N. 90th Street
Omaha, NE 68114
ATTORNEY FOR DEFENDANT RSM ACQUISITION, LLC

mscahill@ctagd.com
Michael F. Scahill
CASSEM TIERNEY ADAMS
 GOTCH & DOUGLAS
9290 West Dodge Road, Ste. 302
Omaha, NE 68114-3320
ATTORNEY FOR TRI-CITY FOODS, INC.

                                                  /s/ Joel E. Feistner